312 So.2d 385

**Arvil Jean LAWRENCE**

**v.**

**H. Jean GAYLE, as Mayor of the City of Warrior, et al.**

**SC 792.**

Supreme Court of Alabama.

April 17, 1975.

Rehearing Denied May 22, 1975.

Rogers, Howard, Redden & Mills, Birmingham, for appellees.

Jones & Landrum and Roger M. Monroe, Birmingham, for appellant.

JONES, Justice.

This is an appeal by Arvil Jean Lawrence (plaintiff-appellant) from a final decree of the Circuit Court of Jefferson County denying her declaratory relief and permanent injunction against the Mayor and City Council of the City of Warrior, Alabama (defendant-appellee).

Mrs. Lawrence owns and operates Wayne's Grocery within the police jurisdiction of the City of Warrior. By letter from her attorney dated June 28, 1973, accompanied with a tender of $40, Mrs. Lawrence applied for a retail license to sell "off-premises" beer. The City of Warrior denied her license under City Ordinance 70–3 which requires an annual license fee of $5,000. Mrs. Lawrence claims that such a fee is prohibitive, oppressive, and unconstitutional, and seeks a declaratory judgment and injunction against the City.

The appeal presents the precise issue whether the $5,000 license fee required by the ordinance to authorize the retail sale of beer constitutes a valid exercise of the City's licensing and police powers; or, conversely, whether the amount of the fee of itself constitutes an unreasonable, discriminatory, and prohibitive exercise of such powers. We hold that the ordinance is invalid. The final decree of the trial court is reversed and the cause is remanded for an order not inconsistent with this opinion.

Initially, the City contends that Mrs. Lawrence has committed four procedural errors in this suit, which in themselves warrant our affirmance of the lower Court's decree:

■ First, the City contends that Mrs. Lawrence's brief is deficient in that her assignments of error are not substantially argued, pointing out that where no assignments of error are mentioned in appellant's brief, they are considered argued in bulk. Zanaty v. Hagerty, 280 Ala. 232, 191 So.2d 516 (1966). It is true that Mrs. Lawrence makes no direct reference to any of her assignments of error, but since the decree which she attacks is a single entity upholding the validity of the ordinance, and the whole of her argument centers around this point, we find no merit in this contention. Matthews v. Matthews, 292 Ala. 1, 288 So. 2d 110 (1974); Everitt v. Everitt, 279 Ala. 64, 181 So.2d 504 (1965).

■ Secondly, the City argues that the Attorney General must be served with a copy of the proceedings when the constitutionality of a city ordinance is challenged in an action for a declaratory judgment. Tit. 7, § 166, Code of Alabama 1940 (Recomp.1958). We agree that this requirement is mandatory and goes to the juris-

diction of the Court. Board of Trustees of Employees' Retire. Sys. v. Talley, 286 Ala. 661, 244 So.2d 791 (1971). But such failure, defect, or insufficiency must be brought to this Court's attention prior to its submission by written motion; and, failure to timely file this motion, giving appellant reasonable opportunity to correct such defect, constitutes a waiver of consideration by this Court. Supreme Court Rule 52. The City failed to meet the requirements of this rule and hence this argument is without foundation.

Thirdly, the City contends that there exists no justiciable controversy between the parties, since no personal request was made by Mrs. Lawrence for a license. She counters with the contention that she repeatedly made such requests and the City admits that a letter was received from her attorney requesting a license.

■ It is elementary that omissions and commissions of an attorney at law are to be regarded as acts of the client whom he represents. Nelson v. Darling Shop of Birmingham, Inc., 275 Ala. 598, 157 So.2d 23 (1963); Cooper v. Cooper, 273 Ala. 694, 144 So.2d 62 (1962); see also Berk v. State, 225 Ala. 324, 142 So. 832 (1932).

Moreover, the evidence is without dispute that the City's refusal to issue the license was not grounded upon the fact that the application came from the attorney rather than from Mrs. Lawrence personally. Accordingly, the "justiciable controversy" requirement of the declaratory judgment action is not here lacking.

■ Lastly, in pointing out that her letter requesting the license was dated June 28, 1973, and that her ABC license was not issued until August 30, 1973, the City refers to The Alabama Constitution, Art. 4, § 89. This section provides only that the state legislature does not have the power to authorize any municipality to pass any law inconsistent with the general laws of the state. Thus, argues the City, a municipality cannot license a business which is for-bidden by the general law. Hewlett v. Camp, 115 Ala. 499, 22 So. 137 (1896).

The fallacy in this argument is that, although the retail sale of beer requires the issuance of an ABC license, such sale is not forbidden by the State of Alabama; and, here again, the evidence is clear that this was not the basis for the City's denial of Mrs. Lawrence's application for the license. At the time of trial, Mrs. Lawrence had a valid ABC license. If, in fact, this had been the basis for its denial, the City could have then rendered this cause moot at the time of trial by simply offering to accept the application and grant the license.

As to the substantive issue before us, Mrs. Lawrence contends that the City's $5,000 beer license fee is both unreasonable and oppressive. In support of this, she argues that the amount of the fee is at least 100 times the amount charged by most municipalities immediately surrounding Warrior, citing the example of $40 beer license fee charged by the City of Birmingham.

We feel that in our analysis of the foregoing issue, for the sake of clarity, it would be judicially prudent to chronologically trace the evolution of our case law in this area.

In State v. Centanne, 265 Ala. 35, 89 So.2d 570 (1956), the plaintiff brought suit against the City of Prichard for its refusal to issue him a license to sell off-premises beer after he had been previously so licensed by the Alcoholic Beverage Control Board. The City was relying on an ordinance which provided that "no license shall be issued to any establishment which is nearer than five hundred (500) feet to the route usually traveled from any church or schoolhouse."

The plaintiff in *Centanne* contended that the ordinance violated Art. 4, § 89, The Alabama Constitution, which states:

"The legislature shall not have the power to authorize any municipal corpo-

ration to pass any laws inconsistent with the general laws of this state."

This Court held that the ordinance was a valid exercise of the municipality's authority:

"It is well settled that the fact that an ordinance [which] enlarges upon the provisions of a statute by requiring more restrictions than contained in the statute creates no 'conflict,' unless the statute limits the requirements for all cases to its own prescriptions.

.    .    .    .    .    .

"The provisions of the ordinance here in question, to which we have referred, do no more than add restrictions to the statutory provisions in that respect. The statute does not prescribe restrictions to be exclusive of all others."

The ordinance in *Centanne* was held not to be inconsistent with the authority of the ABC Board since it did not prohibit the sale of beer which the ABC license permitted; but, since it only required more restrictions than the original license, it was not repugnant to the original legislative intent of the licensing statute.

In King v. Kendrick, 265 Ala. 160, 90 So.2d 88 (1956), the plaintiff, having been previously awarded an ABC beer license, appealed a decree overruling his motion to dissolve a temporary injunction prohibiting the sale of beer by him in his grocery store without a county permit. His contention was that the county was powerless to deny him the permit due to the State's previous licensing of him to sell beer.

In affirming the trial court's decree, this Court said:

"In the case at bar it is sufficient to say that the regulation here was in force and effect prior to the issuance by the Alcoholic Beverage Control Board of the permit to the appellant and the opening and operation of his business on the premises in question. `Under Title 62, § 330(239a), Pocket Part, Code of 1940,

authority is given the building commissioner for the enforcement of county zoning regulations by means of the withholding of building, use or occupancy permits. In refusing the appellant a use permit to sell beer, the building commissioner was acting within the valid and lawful exercise of his power."

It appears that this Court's decision in *King* to uphold the lower court was grounded both on the prior effectiveness of the zoning regulation and the statutory authority given the building commissioner for the enforcement of the county zoning ordinance.

In Capps v. Bozeman, 272 Ala. 249, 130 So.2d 376 (1961), the City of Prichard appealed the decree of the trial court awarding mandamus to require it to issue an off-premises beer license to the plaintiff. It had refused to issue one because of an ordinance which provided that the place of the beer sales must not be less than one thousand (1000) feet from any church or school. (The plaintiff was 880 feet from a church.)

This Court, in reversing the decision of the lower court in *Capps,* stated:

"Because petitioner's [plaintiff] place of business is shown to be at a location where a beer license is prohibited by the ordinance, petitioner has not shown a clear, legal right in himself to the license applied for, and for his failure to show this indispensable requisite, the judgment awarding the peremptory writ is due to be and is reversed."

This decision is grounded on the denial of the license on the fact that a valid purpose existed behind the enactment of the ordinance and that the plaintiff had failed to demonstrate to the Court why his interest in being allowed to sell beer should be viewed as paramount to the city's purpose in passing the ordinance.

Paulson's Steerhead Restaurant, Inc. v. Morgan, 273 Ala. 235, 139 So.2d 330 (1962), was originally thought to establish

the major guidelines from which this controversy of state versus city licensing could be resolved with some degree of uniformity. There, the plaintiff-restaurant appealed the decision of the trial court sustaining a demurrer to its petition for mandamus and dismissing it. Application was made to the City of Birmingham for a license to sell liquor (mixed drinks) in its restaurant, but it was refused. The restaurant contended that the statutory scheme of placing the power to issue a liquor license in the ABC Board negated the right of a municipality to approve or disapprove the application.

Mr. Justice Coleman, speaking for this Court in holding that a municipal governing body does have irrevisable discretion whether to grant or withhold its consent and approval of the issuance of a liquor license, wrote:

"The legislature *appears to have made a distinction between liquor licenses and beer licenses.* In § 5, Title 29, the authority of the board to issue and suspend liquor licenses is stated in one sentence. Like authority as to beer licenses is stated in the sentence following immediately thereafter. The issuance of liquor licenses is dealt with in §§ 13, 14, 15 et seq., Title 29, while the issuance of retailer's beer licenses is provided for in § 25 et seq., of the same title. § 22, Title 29, provides that every license issued to a restaurant for the sale of liquor shall authorize the licensee to sell vinous or brewed beverages at the same place, subject to certain restrictions. The quoted Code sections require approval of the municipal governing body for the issuance of liquor licenses, but, so far as we are advised, *the statute does not state that such approval is required for the issuance of beer licenses.* The conclusion appears to us inescapable that the legislature has placed beer licenses in one category and liquor licenses in another." (Emphasis supplied.)

Thus, the Court *seemed* to be saying that while a municipality had complete discretion to decide if a liquor license should be

issued, regardless of whether one had been previously issued by the ABC Board, it had no right to deny a license for the sale of beer if such had been previously licensed by the State.

In Norwood v. Capps, 278 Ala. 218, 177 So.2d 324 (1965), an ordinance which required that an establishment licensed to sell beer for on-premises consumption must be more than five hundred (500) feet from any other establishment so licensed was held valid on authority of Tit. 37, § 455, Code of Alabama 1940 (Recomp.1958), which provides:

"Municipal corporations may, from time to time, adopt ordinances and resolutions not inconsistent with the laws of the state, to carry into effect or discharge the powers and duties conferred by this title, and provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort, and convenience of the inhabitants of the municipality, and enforce obedience to such ordinances by fine not exceeding one hundred dollars, and by imprisonment or hard labor not exceeding six months, one or both."

The Court reasoned that while there was no logical reason why such an ordinance should apply to the sale of beer for off-premises consumption, it was a reasonable and valid exercise of a municipality's police power to place such a restriction on places where beer is consumed in order to stop the possibility of having the entire area become a saloon.

In Campbell v. City of Hueytown, 289 Ala. 388, 268 So.2d 3 (1972), the City had a zoning ordinance providing that beer could only be sold in those sections of town zoned B-4. There was, however, no section zoned B-4 and thus the sale of beer in the City was, in effect, completely prohibited.

In determining that the ordinance was not proper, this Court stated:

"This question is whether or not a municipality may, by zoning *or otherwise,*

prohibit the sale of beer where such sale has been licensed by the State.

"We think that it cannot. This court has previously held with a view toward this question that there is no statutory requirement that an application for a beer license have the approval of the municipality affected, nor does the statute in any way confer the veto power on the municipality. Paulson's Steerhead Restaurant, Inc. v. Morgan, 273 Ala. 235, 238, 139 So.2d 330, 333, and cited with approval in Reams v. State ex rel. Clokey, 45 Ala.App. 614, 617, 234 So.2d 893. Also we consider the Opinion of Attorney General of May 29, 1947, Vol. 7, page 171, which was adopted in the Paulson case, supra, which said that a *city has authority to levy a reasonable license for selling beer but has no authority to prohibit the selling of beer by one legally licensed to do so by the State.*" (Emphasis supplied.)

Here, again, based upon the holding of *Paulson,* this Court *seemed* to be saying that a municipality may not prohibit the sale of beer where such sale has been previously licensed by the State. However, it does have the authority to levy a *reasonable license fee* for the privilege of selling such beer.

In Willis v. State ex rel. Flynt Oil Company, Inc., 290 Ala. 227, 275 So.2d 657 (1973), the Town of Morris prohibited the sale of alcoholic beverages within its limits by an ordinance providing penalties for its violation of a $100 fine, jail, or hard labor not to exceed six months. Flynt petitioned for and was granted a writ of mandamus to compel the Town and its Mayor to issue him a beer license. In affirming that decree of the trial court, Mr. Justice Faulkner, in speaking for the majority, stated:

"Given the existing state of the law, a municipality may not prohibit sale of beer where such sale has been licensed by the State of Alabama. Campbell v. City of Hueytown, 289 Ala. 388, 268 So.

2d 3 (1972); Reams v. State ex rel. Clokey, 45 Ala.App. 614, 234 So.2d 893 (1970); State ex rel. Morrow v. Santa Cruz, 252 Ala. 130, 39 So.2d 786 (1949)."

Once again, impliedly following the rationale of *Paulson,* this Court held that such total prohibition was unlawful because of the prior issuance of the state license.

Then came USA Oil Corporation v. City of Lipscomb, 293 Ala. 103, 300 So.2d 362 (1974). Here, the City passed an ordinance prohibiting the sale of beer for off-premises consumption within three blocks of a church. The plaintiff (whose place of business was within the prohibited area), having previously been issued a state license, prayed for mandamus to require the City to issue the license. The trial court's denial of the writ was affirmed on appeal.

This Court, in resolving any apparent conflict with *Paulson* (holding that while the statute requires approval by the municipality for the issuance of a liquor license, it does not require such approval for the issuance of a beer license), stated:

"The '*such* approval' which is not required for the issuance of beer licenses is the exercise of that 'irrevisable discretion' which the statute confers on municipal governing bodies to grant or deny liquor licenses. That irrevisable discretion is not conferred on municipalities with respect to the issuance of beer licenses. The absence of an irrevisable discretion to deny 'such approval' of the issuance of a beer license does not, however, require or even suggest that municipalities have no authority whatever to regulate or control in any respect the issuance of a license to sell beer."
The Court went on to hold:

" . . . that a municipality has authority to adopt an ordinance prohibiting the sale of beer within a reasonable distance from a school or church building."

The rule with regard to the authority of a municipality to regulate (by means of licensing where an ABC license has previously been issued) the retail sale of beer, as evolved from the foregoing cases, may be stated as follows:

■ A municipality may prescribe conditions as a prerequisite to the issuance of a beer license so long as such conditions bear a reasonable relationship to the health, safety, and public welfare of the community; but it may not, under the guise of its licensing authority, prescribe such conditions as to constitute a prohibition of the sale of beer.[1]

■ When this test is applied to the $5,000 annual license fee prescribed by the city ordinance here in issue, we are left with no alternative but to hold the ordinance invalid. It would be the height of naivete if we failed to take judicial knowledge of the fact that the only conceivable purpose for fixing the annual license fee at $5,000 is to totally prohibit the sale of beer. The zoning ruse employed in *Hueytown* is no more effective as a practical matter in prohibiting the sale of beer than the exorbitant and unreasonable license fee of $5,000 in the instant case. The amount of the license fee on its face, coupled with the evidence that the City of Warrior has never issued a beer license, is conclusive on this point.

Reversed and remanded with instructions.

HEFLIN, C. J., and FAULKNER, SHORES and EMBRY, JJ., concur.

MERRILL, BLOODWORTH, MADDOX and ALMON, JJ., dissent.

BLOODWORTH, Justice (concurring in part and dissenting in part.)

I concur in Justice Jones' opinion for the majority as to his treatment of the issue of assignments of error.

I must respectfully dissent from the remainder of the opinion as I am of the opinion that no "justiciable controversy" existed between the parties for two reasons.

First, the letter from appellant's attorney of June 28, 1973, seeking a business license to authorize the retail sale of beer was presented *before* an ABC license was granted appellant on August 30, 1973. Thus, at the time the letter request was made, the City had no authority to grant the license. It was therefore justified in denying the application, and the trial judge was correct in denying appellant relief.

Second, appellant made no further effort to apply for a license to sell beer after she had been denied a license by the City and after receiving her ABC license on August 30, 1973. Moreover, appellant did not comply with a city ordinance (passed August 6, 1973) requiring written application under oath to the city clerk: giving the names of applicants, location, type of business, criminal record, with a copy of the ABC license attached, etc. Appellant's undisputed failure to comply with the requirements of the city ordinance governing the application justified the trial judge's denial of relief. See U. S. A. Oil Corporation v. City of Lipscomb, 293 Ala. 103, 300 So.2d 362 (1974, per Coleman, J.) and cases there cited upholding municipal ordinances containing similar provisions to those found in the ordinance in the instant case.

The rule of our cases is clear to effect that where no justiciable controversy exists, there is no jurisdiction to grant relief. Tit. 7, § 156, Code, and cases cited.

1. See Bessemer Theatres, Inc. v. City of Bessemer, 261 Ala. 632, 75 So.2d 651 (1954); Franks v. City of Jasper, 259 Ala. 641, 68 So.2d 306 (1953); Ala. Gas Co. v. City of Montgomery, 249 Ala. 257, 30 So.2d 651 (1947).

It is thus that I would not reach the point decided by the majority—that the ordinance requiring a $5,000 annual license for the retail sale of beer is "invalid." Although I might consider $5,000 to be a prohibitive sum for such license, neither the trial judge nor we reach this issue, in my judgment.

I do not consider it is necessary that I state my opinion on the issue that the Attorney General was not served in view of the result I would reach.

MERRILL, MADDOX and ALMON, JJ., concur.