COBB, Chief Justice
(dissenting).
I respectfully dissent. I write first to note my continued concern with this Court’s inclination to intrude into areas properly reserved to the trial court’s discretion, with the added detriment of unduly expanding this Court’s “piecemeal” appellate jurisdiction. Previously, this Court sought to avoid reviewing cases in such a fashion and quoted with approval the federal plan of constraining the use of extraordinary writs:
“ ‘In strictly circumscribing piecemeal appeal, Congress must have realized that in the course of judicial decision some interlocutory orders might be erroneous. The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is clear abuse of discretion or “usurpation of judicial power.” ’ ”
Ex parte Alabama Power Co., 280 Ala. 586, 589, 196 So.2d 702, 705 (1967) (quoting Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383-84, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (emphasis added)). See also Ex parte Textile Workers Union of America, 249 Ala. 136, 30 So.2d 247 (1947).
With respect to the circumstances presented by this case, it is apparent that the main opinion avoids any conclusion that under the doctrine of forum non conve- *544 niens, Ala.Code 1975, § 6-3-21.1, the trial court exceeded its discretion in refusing to transfer the case because the facts show that there is little difference between the forums in convenience to the parties. That is, the facts do not support the issuance of the instant writ under the doctrine of forum non conveniens. The doctrine of forum non conveniens requires the proponents of a change in venue to show that the proposed location — here Lee County— would be “significantly more convenient” than the current location — here Macon County — a showing that the instant facts do not support. Moreover, in this situation, the trial court would be well within its discretion in deferring to the plaintiffs choice of the forum in which to try the cause. See, e.g., Ex parte Bloodsaw, 648 So.2d 553 (Ala.1994); Ex parte Johnson, 638 So.2d 772 (Ala.1994); and Ex parte Townsend, 589 So.2d 711 (Ala.1991).
Thus, the main opinion shifts its emphasis to whether the change in venue is warranted in the “interest of justice.” Under Ex parte First Tennessee Bank National Ass’n, 994 So.2d 906, 909 (Ala.2008), and Ex parte Fuller, 955 So.2d 414, 416 (Ala.2006), the Court would then simply weigh factors concerning “justice,” such as the connection between the case and the county in which venue is sought, to decide, entirely subjectively, whether justice is better served by trying the case in one county than in another. Unlike the standard articulated in the main opinion, in which the Court lists such factors as the facts that none of the parties reside in Lee County and that some of the parties do conduct business in Macon County before concluding that, nevertheless, the case must be transferred to Lee County because the “connection” with that county is stronger than the “connection” with Macon County, primarily because the accident and the subsequent investigation of the accident occurred in Lee County.
In my view, this sort of analysis flies in the face of the deference this Court once paid to a plaintiffs right to choose among appropriate forums for the prosecution of his or her cause,[7] and it further permits this Court to substitute its discretion for that of the trial court. Moreover, the simple weighing of factors to determine the strength of a particular forum’s connection or the extent that a transfer would serve justice invites parties to petition this Court for a writ of mandamus to change between two equally “convenient” venues in most situations where there are two or more acceptable venues. I believe that a proper evaluation of the interest-of-justice factor in § 6-3-21.1 would require the movant to show a significant likelihood of injustice if the transfer does not occur before this Court invalidates the plaintiffs choice of forum and displaces the trial court’s discretion with its own. Accordingly, in order to warrant a change of venue based on the interest of justice, the movant should be required to present facts showing a significant likelihood of injustice in the absence of the transfer of the case. Although this requirement has not been adopted in this State, it underlies the rationale of the transfer of, or the refusal to transfer, a case in numerous decisions in other jurisdictions. See, e.g., King v. Russell, 963 F.2d 1301, 1304 (9th Cir.1992) (approving the federal district court’s dismissal of a cause based on improper venue in part because the plaintiff had been unsuccessful in filing the same claims in another venue — “it would not be in the interests of justice to transfer this *545 case because, among other reasons, King herself expressed no interest in transfer and because ‘of the fact that the action smacks of harassment and bad faith on the plaintiffs part in that it appears that she filed it here after repeatedly losing on at least some similar claims in California.’ ”); Wood v. Santa Barbara Chamber of Commerce, 705 F.2d 1515, 1523 (9th Cir.1983) (approving the federal district court’s refusal to transfer a cause to a venue where personal jurisdiction did exist because “[¡'justice would not have been served by transferring Wood’s claims back to a jurisdiction that he purposefully sought to avoid through blatant forum shopping”); Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1212 (D.Haw.2002) (holding generally that a showing of the relative injustice to the parties was a factor to be considered in transferring a case under federal law); Garza v. Garcia, 137 S.W.3d 36 (Tex.2004) (applying the Texas statutory requirement that “the transfer of the action would not work an injustice to any other party”); and In re Trust Created Under Agreement Dated September 19, 1983, 469 N.E.2d 768 (Ind.Ct.App.1984) (noting that a change of venue in the interest of justice must be based upon a showing that the litigation of the cause in the state is so inconvenient that substantial injustice is likely to result). See, generally, C.P. Jhong, Annotation, Construction and Application of Federal Statute (28 U.S.C.A. § 1106) Providing for Dismissal or Transfer of Cases for Improper Venue, §§ 22-31, 3 A.L.R. Fed. 467 (1970, Supp. 2008-2009).
I recognize that none of these cases is precisely on point with the venue scheme set out in § 6-3-21.1. They do, however, give examples of what factors might be considered as a basis for venue decided on the “interest of justice.” The point is that the distinction between a change of venue for the convenience of the parties and a change of venue in the interest of justice should be more significant than simply assessing the relative travel times. A change of venue based on the “interest of justice” should meet a higher standard, one that can be plainly and specifically articulated. It is this Court’s responsibility to enunciate such a standard, based on the statute, which can then be understood and applied by the trial courts and all practitioners. I believe that the connection test as employed by the majority here falls short of the appropriate analysis for changing venue “in the interest of justice.” Although “connectedness” might be one consideration, the Court should also consider factors such as the ability of the parties to obtain a fair and timely trial in the respective venues, the selection of venue for purposes of harassment or fraud on the court, and the judicial resources that are available in a particular venue to adjudicate the cause. That is, the party seeking a change of venue “in the interest of justice” should be prepared to show that the denial of the motion for a change of venue will result in a significant likelihood of injustice.
It is a long-settled maxim of American jurisprudence that “justice delayed is justice denied.” Folsom v. Wynn, 631 So.2d 890, 898 (Ala.1993) (“This Court recognizes that implicit in the Judiciary’s constitutional requirement to render services is the requirement that those services be delivered in a timely manner.”). See also Chism v. Jefferson County, 954 So.2d 1058 (Ala.2006), and Willis v. State ex rel. Flynt Oil Co., 290 Ala. 227, 275 So.2d 657 (1973). The ever increasing tendency of parties to seek mandamus relief, thus adding many more months to the adjudicative process, must be reexamined. In this case, the counties in which this case would properly be adjudicated are equally convenient to the parties. Although the courts’ relative *546 caseloads were not a factor argued in the context of this case, this Court’s decision moves a case from a county with an average caseload to a county with one of the highest caseloads in the State, a decision that will almost certainly add increased delay to the resolution of this case. In the future, this factor should also be considered when this Court acts in “the interest of justice” to examine a transfer or a refusal to transfer under § 6-3-21.1.

. See Bloodsaw, Johnson, and Townsend, supra. See also Ex parte Nichols, 757 So.2d 374 (Ala. 1999).